JOSE DE JESUS RIVERA
jrivera@hmpmlaw.com
GERALD MALTZ
gmaltz@hmpmlaw.com
**HARALSON, MILLER, PITT, FELDMAN &**
**McANALLY, P.L.C.**
2800 N. Central Avenue, Suite 840
Phoenix, AZ 85004-1069
Phone: (602) 266 5557
Fax: (602) 266.2223

NIALL P. McCARTHY (*pro hac vice pending*)
nmccarthy@cpmlegal.com
ANNE MARIE MURPHY (*pro hac vice pending*)
amurphy@cpmlegal.com
ARON K. LIANG (*pro hac vice pending*)
aliang@cpmlegal.com
MATTHEW K. EDLING (*pro hac vice pending*)
medling@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Phone: (650) 697-6000
Fax: (650) 697-0577

GEORGE DONALDSON (*pro hac vice pending*)
mailto:info@logdlaw.com
**LAW OFFICES OF**
**GEORGE DONALDSON**
2298 Durant Avenue
Berkeley, CA 94704
Phone: 510-548-7474
Fax: (510) 548-7488

*Attorneys for Plaintiff Jill B. Carter, individually*
*and on behalf of Jill B. Carter IRA*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**
**PHOENIX DIVISION**

| | |
|---|---|
| **JILL B. CARTER**, individually and on behalf of **JILL B. CARTER IRA**, derivatively on behalf of Cole Credit Property Trust III, Inc.<br><br>Plaintiff,<br><br>v.<br><br>**COLE HOLDINGS CORPORATION;**<br>**COLE REIT ADVISORS III, LLC;**<br>**CREINVESTMENTS, LLC;** | Case No.<br><br>**VERIFIED DERIVATIVE COMPLAINT FOR:**<br><br>1.   **BREACH OF FIDUCIARY DUTY;**<br><br>2.   **ABUSE OF CONTROL;**<br><br>3.   **CORPORATE WASTE;** |

**DERIVATIVE COMPLAINT**

**CHRISTOPHER H. COLE;**
**MARC T. NEMER;**
**THOMAS A. ANDRUSKEVICH;**
**SCOTT P. SEALY;**
**LEONARD W. WOOD;**

inclusive,

                                    Defendants,

-and-

**COLE CREDIT PROPERTY TRUST III, INC.,**

                        Nominal Defendant.

**4. UNJUST ENRICHMENT;**

**5. AIDING AND ABETTING BREACH OF FIDUCIARY DUTY;**

**6. BREACH OF CONTRACT;**

**7. DECLARATORY RELIEF**

**JURY TRIAL DEMANDED**

**DERIVATIVE COMPLAINT**

# TABLE OF CONTENTS

Page

**I.    OVERVIEW OF WRONGDOING** ................................................................. 1

**II.    NATURE OF THE ACTION** ..................................................................... 7

**III.    JURISDICTION AND VENUE** .............................................................. 9

**IV.    PARTIES** ................................................................................................ 10

   A.    Plaintiff .................................................................................................. 10

   B.    Defendants ............................................................................................ 10

      1.    Nominal Defendant ....................................................................... 10

      2.    Individual Defendants ................................................................... 11

      3.    Entity Defendants .......................................................................... 14

      4.    Aiding and Abetting/Conspiracy .................................................. 14

      5.    Unnamed Participants ................................................................... 14

**V.    STATEMENT OF FACTS** ..................................................................... 16

   A.    CCPT III's Relationship To Cole Holdings and the Advisor ................ 16

   B.    Internalization and Defendant Cole's Windfall ................................... 17

   C.    Cole's Exorbitant Consideration is Unwarranted ................................ 19

   D.    ARCP's Offers ...................................................................................... 21

   E.    CCPT III's Board of Directors Ignore All Criticisms and Other Offers ........................ 25

**VI.    RESPONSIBILITIES OF OFFICERS AND DIRECTORS** ................ 26

**VII.    DEMAND ALLEGATIONS** .................................................................. 29

**VIII.    CAUSES OF ACTION** .......................................................................... 32

   FIRST CLAIM FOR RELIEF ..................................................................... 32

   SECOND CLAIM FOR RELIEF ................................................................ 35

   THIRD CLAIM FOR RELIEF ................................................................... 36

   FOURTH CLAIM FOR RELIEF ............................................................... 36

   FIFTH CLAIM FOR RELIEF .................................................................... 37

   SIXTH CLAIM FOR RELIEF ................................................................... 39

   SEVENTH CLAIM FOR RELIEF ............................................................. 40

**PRAYER FOR RELIEF**................................................................................................42

**JURY TRIAL DEMAND** ............................................................................................43

Plaintiff Jill B. Carter, individually and on behalf of Jill B. Carter IRA ("Plaintiff"), files this action derivatively on behalf of the Cole Credit Property Trust III, Inc. ("CCPT III"). Plaintiff alleges the following upon information and belief, except as to the allegations pertaining to herself, which are alleged upon Plaintiff's personal knowledge, based upon the investigation of Plaintiff and her counsel, including a review of legal and regulatory filings, press releases and media reports about CCPT III.  Plaintiff brings claims against Defendants Christopher H. Cole ("Chris Cole"), Marc T. Nemer ("Nemer"), Thomas A. Andruskevich ("Andruskevich"), Scott P. Sealy ("Sealy") and Leonard W. Wood ("Wood") (hereinafter referred to as the "Individual Defendants"), and Cole Holdings Corporation ("Cole Holdings"), Cole REIT Advisors III, LLC ("CR III Advisors") and CREInvestments, LLC ("CREInvestments") (hereinafter referred to as the "Entity Defendants").

## I.

## OVERVIEW OF WRONGDOING

1.      Plaintiff brings this lawsuit to prevent the brazen improper self-dealing involved in an "internalization" plan authorized by the Board of Directors of CCPT III, a non-publicly traded Real Estate Investment Trust ("REIT") that maintains its principal place of business in **Phoenix, Arizona**.

2.      Under the internalization plan, which is embodied in a "definitive merger agreement" that was announced on <u>March 6, 2013</u>, CCPT III would pay over one hundred million dollars to "acquire" an "external" real estate advisor that, in reality, is run and operated by the very same individuals who run and operate CCPT III.  This internalization plan serves no purpose other than to allow the Individual Defendants, principally Chris Cole (the Chief Executive Officer, President and Chairman of the Board of CCPT III as well as the former Chief Executive Officer of the external real advisor being "acquired"), improperly to capture for themselves tens of millions of dollars in corporate funds and assets that rightfully belong to, and should be maintained by, CCPT III for the benefit of all of its shareholders.

3.      Thus, in connection with the merger, CCPT III would acquire defendant Cole Holdings, a holding company that includes CCPT III's external real estate management advisor, CR III Advisors for **$20 million in cash** and approximately **10.7 million shares of CCPT III**

**common stock**, with the possibility of additional issuances of CCPT III common stock based on future contingencies.  One of the contingencies is that if CCPT III is listed on the New York Stock Exchange ("NYSE"), there will be an additional issuance of approximately 2.1 million shares of CCPT III common stock to CR III Advisors.

4.     According to the March 6, 2013 announcement, CCPT III also intends to pursue a listing on the NYSE.  If CCPT III is so listed, it will issue approximately 2.1 million shares of CCPT III common stock to CR III Advisors and bestow an additional windfall worth millions of dollars on the principals of CR III Advisors and Cole Holdings, principally Defendant Chris Cole.

5.     The events announced on March 6, 2013 were driven by the self-interest of the Individual Defendants in this case, without regard to the harm that will befall CCPT III and its shareholders.  Not only does the internalization plan constitute an effective misappropriation of corporate assets, but also by going public and effectively issuing shares to themselves in the process, the principals of CR III Advisors and Cole Holdings will have created a public market in which they can eventually liquidate all of their shares in CCPT III and exit the company, while, at the same time, diluting the value of the shares owned by the other shareholders of CCPT III, including Plaintiff.

6.     The definitive merger agreement and the proposed internalization it would effectuate constitute patent self-dealing and are fraught with conflicts of interest.  Indeed, CCPT III, Cole Holdings and CR III Advisors are inexorably linked as they share all or substantially all of the same management, officers and directors.  CR III Advisors is wholly-owned indirectly by Defendant Chris Cole, who is the Chief Executive Officer, President and Chairman of the Board of CCPT III and the former Chief Executive Officer of CR III Advisors.  Defendant Nemer, a director of CCPT III, is also the current Chief Executive Officer of CR III Advisors.  The consideration to be paid by CCPT III under the proposed merger will invariably profit the same individuals who made the decision to go forward with the transaction.

7.     Put simply, the Individual Defendants own, manage and operate both CCPT III and CR III Advisors.  In agreeing to the merger and the compensation that would be paid out for that merger, the Individual Defendants would be paying themselves tens of millions of dollars

without any meaningful structural change in the organization or operation of CCPT III.  CR III Advisors already serves as the external real estate advisor for CCPT III.  After the merger is finalized, CR III Advisors would still remain the real estate advisor for CCPT III.  In other words, no meaningful functional change will have occurred.  The only real change between the "before" and "after" would be that CCPT III will have lost the more than a hundred million dollars that will have been pocketed by the Individual Defendants, directly or indirectly by virtue of their ownership and control of the Entity Defendants.

8.      In fact, as part of the transaction, Defendant Chris Cole and Defendant Nemer would also both receive additional massive windfalls in the form of exorbitant employment agreements that were not the product of arms-length negotiating, but instead were "sweetheart" deals.  For example, Defendants Chris Cole and Nemer would be paid annual base salaries of $750,000 and $625,000, respectively, "subject to increase (but not decrease)," annual incentive bonuses of 150% of annual base salary at target and 300% of annual base salary at maximum, starting in the 2015 fiscal year, an annual equity award grant to each, plus additional benefits, and full indemnification.  Finally, each would receive long-term incentive and retention awards consisting of CCPT III shares with an accounting expense value of $7.5 million for Defendant Chris Cole and $6.0 million for Defendant Nemer.  This additional compensation is above and beyond the direct payments in cash and CCPT III stock that will be provided to Cole Holdings and CR III Advisors, which are wholly owned by Defendant Chris Cole.

9.      "Internalization" transactions like the one at issue here, in which an "external" real estate advisor is merged into the parent entity, and that involve "internalization fees" to the principals of the non-public REIT were highly popular in the early 2000's in the non-public REIT market.  But they have been highly criticized as providing an expedient mechanism for the principals of a non-public REIT and the real estate advisor to personally and quickly profiteer to the great expense and detriment of the REIT's non-affiliated shareholders.  The fact that internalizations can be executed without shareholder approval emboldens the principals of the non-public REIT and the real estate advisor to seize and waste corporate assets without explanation or meritorious justification to the shareholders.

10.     The internalization transaction contemplated here is no different.  The purported justification of Defendant for CCPT's proposed acquisition of CR III Advisors is that CCPT III would be acquiring the future income stream and value that comes from having a real estate company with assets under management ("AUM") of over $12 billion.  The problem, however, is that virtually all of the AUM are Cole-related.  For example, the majority of the AUM that CR III Advisors manages is the AUM of CCPT III.  In other words, CCPT III is paying hundreds of millions of dollars to acquire the right to earn money from itself.  The remaining AUM consists almost exclusively of the AUM of Cole Credit Property Trust II, Inc. ("CCPT II") and Cole Credit Property Trust, IV, Inc.  ("CCPT IV").  According to public announcements, the $3.5 billion of AUM from CCPT II is being acquired by a third party, meaning that, in reality, CR III Advisors would be adding no value or additional income stream to CCPT III.   Again, the only value that would accrue as a result of the transaction would accrue to the benefit of the Individual Defendants, not CCPT III.

11.     Not only have the Individual Defendants failed to provide to investors any evidence that legitimately justifies their the decision to internalize Cole Holdings and CR III Advisors, but also, in abdication of their fiduciary duties to CCPT III and its shareholders, CCPT III's Board of Directors seemingly made no effort to determine if there was a better, less costly or more efficient manner in which to protect the interests of CCPT III or even to conduct a valuation analysis of the "internalization" of Cole Holdings and CR III Advisors.  No bid was sought to determine if there were other external real estate management advisors who could manage these properties owned by CCPT III.   In short, no effort was made by the CCPT III Board of Directors to determine if the internalization was a good idea to begin with, and if so, what terms would be most beneficial to CCPT III, as opposed to the Individual Defendants.

12.     Defendants' determination to prefer themselves to the detriment of CCPT III and its shareholders is further demonstrated by their summary rejection of highly competitive bids of American Realty Capital Properties, Inc. ("ARCP") to acquire CCPT III.  These bids were made repeatedly.

13.     Recently in a letter ARCP Chief Executive Officer Nicholas Schorsch sent to the CCPT III Board of Directors on March 19, 2013 and publicly announced a day later, on <u>March</u>

20, 2013. The ARCP proposal included $5.74 billion in compensation, and after acquiring the debts of CCPT III, the value of the acquisition would be in approximately $9 billion. This bid would create the largest, highest quality publicly traded net lease REIT, a high demand area of the REIT market, since it involved high quality commercial single tenants. The bid was fully financed by Barclays plc. In his March 19, 2013 letter, Mr. Schorsch wrote, "[o]ur proposal will provide a higher level of consideration delivered sooner and with greater certainty." Although CCPT III had indicated it was planning to go public, that would not occur until a later date and there is no certainty that CCPT III would even succeed in going public. On the other hand, the ARCP acquisition bid would have ensured that shareholders received a sum certain upfront to reward them for investing in CCPT III.

14.      The bid from ARCP was to pay $12 per share of CCPT III stock. Most investors paid $10 per share for their CCPT III stock. In addition, ARCP would raise the annual dividend to 74.4 cents a share, a 15% increase over the current 65 cent a share annual dividend. The ARCP proposal would have resulted in an immediate $2 per share profit for the investors in CCPT III, and would have avoided both the substantial risks of CCPT III's going public plan and the internalization kickback to the Individual Defendants.

15.      On March 20, 2013, Mr. Schorsch publicly announced his earlier overtures to negotiate a potential acquisition of CCPT III had been completely ignored by the CCPT III Board of Directors, who would not even respond to his inquiries.

16.      That same day, CCPT III's Board of Directors rejected outright the ARCP bid, without conducting any due diligence or even making a counter-offer. CCPT III's Board of Directors made the decision to reject the ARCP bid and go forward with the internalization plan in one day, without conducting any analysis and without consulting with the CCPT III shareholders.

17.      It is evident that the CCPT III Board of Directors made their decisions based on their own self-interest and not in accordance with the fiduciary duties owed to the shareholders of CCPT III. The ARCP bid would have terminated the sweetheart deal earmarked for the Individual Defendants under the internalization plan. In other words, the ARCP bid, while fair to all of the shareholders of CCPT III, would have deprived the Individual Defendants of the ability

to drain the resources of CCPT III into their own pockets prior to CCPT III becoming a publically-traded REIT.

18.     On <u>March 21, 2013</u>, after announcing CCPT III's outright rejection of a competitive $9 billion acquisition bid from ARCP, the Individual Defendants reiterated their intention to go forward with the definitive merger agreement with Cole Holdings, in which CCPT III would internalize its own long-time real estate advisor, an act that profits only the senior managers, officers and directors of CCPT III, Cole Holdings and CR III Advisors (all of whom are the exact same people) to the detriment of CCPT III and its shareholders.

19.     By rejecting outright the ARCP bid without negotiation, CCPT III's management is costing CCPT III and its shareholders the opportunity to unlock the value of their shares of CCPT III through a profitable sale of CCPT III to an outside buyer.  If CCPT III's management, officers and directors believed there was more value to their business than what was being offered by ARCP, they should have entered into negotiations with ARCP to unlock that value. Instead, the Individual Defendants were focused on personal profiteering through the internalization plan.

20.     Today, ARCP publicly announced it had increased its offer to acquire CCPT III by **$700 million** – offering not less than $13.59 per share in stock, or $12.50 in cash which equates to a total acquisition value of more than $9.7 billion.  ARCP likewise revealed that it had privately reached out to Cole Holdings and its management numerous times over the last few days without response.

21.     The Board of Directors and officers of CCPT III owe fiduciary duties to CCPT III and its shareholders.  Furthermore, according to the contracts between CR III Advisors and CCPT III, CR III Advisors similarly owes fiduciary duties to CCPT III and its shareholders as agents and advisors for CCPT III.  In blatant disregard of these fiduciary duties to CCPT III and its shareholders, the Board of Directors of CCPT III voted in favor of the internalization of CR III Advisors.

22.     The CCPT III Board of Directors consist of Defendants Chris Cole and Nemer, who each have a substantial multimillion dollar personal financial interest in the transaction that is the subject of this lawsuit, and three other members of the Board of Directors who are

financially and professionally bound to Defendants Chris Cole and Nemer. The Board of Directors has acted, both to: (a) accept the internalization plan that will divert hundreds of millions of dollars of CCPT III's assets to the Individual Defendants, and (b) to reject the ARCP $5.74 billion bid, in order to protect their internalization plan and deny shareholders the ability to unlock the value of their investments in CCPT III.

23.     Because of the repeated and uninterrupted breaches of fiduciary duty, Plaintiff has no choice but to bring her claims to protect CCPT III and its shareholders.

## II.

## NATURE OF THE ACTION

24.     Plaintiff brings this action derivatively on behalf of CCPT III against the Board of Directors and officers of CCPT IIII for gross mismanagement, breaches of fiduciary duty and other misconduct arising from and relating to the internalization plan and the rejection of the ARCP $9 billion and assumed rejection of the $9.7 billion offer. Both decisions made by the CCPT III Board of Directors were done with in the self-interest of the Individual Defendants, not in the best interests of CCPT III and its shareholders. The management, officers and directors of CCPT III owed fiduciary duties to the shareholders of CCPT III, fiduciary duties that they ignored and violated. Plaintiff brings this suit in order to rectify this misconduct.

25.     The CCPT III Board of Directors is utterly beholden to Defendants Chris Cole and Nemer. All face substantial conflicts of interests and none are able to make disinterested decisions in the best interests of the shareholders of CCPT III, as demonstrated by the financial incentives of the internalization plan and the decision of the CCPT III Board of Directors to approve the internalization plan. As such, no demand on the CCPT III Board of Directors is warranted.

26.     The Board of Directors of CCPT III and its officers have fiduciary duties to act in the best interests of CCPT III and its shareholders -- treating their interests with the same care and solicitude as they would their own interests. Instead, the CCPT III Board of Directors has made decisions that will benefit only themselves, to the detriment of CCPT III's shareholders. CCPT III's Board has demonstrated that their sole focus is on the personal gain of the Individual Defendants.

27.     This unlawful behavior has severely damaged CCPT III.  CCPT III has lost substantial credibility and now bears the huge costs of defending itself against its own shareholders, market analysts and business partners, as well as the costs of defending itself in litigation.  Moreover, this unlawful behavior has severely impacted CCPT III's business operations, corporate image and goodwill.  While CCPT III states that it intends to become a publicly traded corporation, CCPT III's actions have demonstrated that it lacks the ability and internal controls to effectively and successfully operate as such.  Even if CCPT III does manage to become a publicly traded company, this misconduct diminishes the potential value of CCPT III as a publically traded company.  These actions harm and will continue to harm CCPT III and its shareholders, and they will adversely affect the ability of CCPT shareholders to obtain a profit from their CCPT III investments.  At the same time, the Individual Defendants will have been enriched by salaries, bonuses, fees and other perks not justified by CCPT III's unlawful activities and performance under their stewardship.  Most importantly, the internalization that CCPT III's Board of Directors is hell-bent on protecting serves only the interests of the Individual Defendants, and no one else.

28.     For these reasons and as set forth more fully herein, Plaintiff seeks to enjoin the Individual Defendants from continuing to manage CCPT III in this manner.  Most importantly, Plaintiff seeks to prevent CCPT III's management, officers and directors from diverting hundreds of millions of dollars of assets from CCPT III for their own pecuniary gain.  Dramatic corporate governance and management changes are necessary to ensure that CCPT III acts, now and in the future, in the best interests of the shareholders of CCPT III, not just the Individual Defendants.

29.     Plaintiff, on behalf of CCPT III, also seeks monetary damages from those who engaged in the wrongdoing because they should be held responsible for making CCPT III and its shareholders whole for the financial and reputational harm suffered by CCPT III as a result of their misconduct.

# III.

## JURISDICTION AND VENUE

30.     This Court has jurisdiction over this dispute under Article III of the United States Constitution and 28 U.S.C. § 1332 because Plaintiff is a resident of Oregon whereas Defendants are incorporated, have their principal places of business or reside in other states, and the amount in controversy exceeds the jurisdictional minimum of this Court.

31.     This Court has jurisdiction over each Defendant since this case involves a Maryland corporation with its headquarters at 2325 East Camelback Road, Suite 1100, Phoenix, Arizona, which is located in this District.  CCPT III, which is headquartered in Phoenix, Arizona, has and will continue to have a significant impact on the economy of Arizona.  Each Individual Defendant has sufficient contacts with Arizona as a director and/or officer of CCPT III to make proper the exercise of personal jurisdiction over them.  Each Entity Defendant has sufficient contacts with Arizona either because Arizona is its principal place of business or because each conducts substantial business in Arizona, either directly, or as a parent, subsidiary, joint venturer, or otherwise part of a corporate family that does substantial business in Arizona.  Each Defendant has significant minimum contacts with this Court to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

32.     Venue is proper in this Court.  A substantial part of the events or omissions giving rise to the claims alleged occurred in the District of Arizona.  Several of CCPT III's directors and senior management are residents of this District.  CCPT III is headquartered in this District and many of the Defendants conduct business operations and/or reside in this District, rendering venue in this District proper.  Furthermore, the Advisory Agreement between Nominal Defendant CCPT III and Defendant CR III Advisors states that all actions relating to disputes between them and relating to the Advisory Agreement, which this claim does, "shall be brought exclusively in Maricopa County, Arizona."  Since Maricopa County is within this District, venue in this District and in this Division is appropriate.

# IV.

# PARTIES

**A.**   **Plaintiff**

33.   Plaintiff **JILL B. CARTER** is the sole beneficial owner and accountholder of the **JILL B. CARTER IRA**, an individual IRA account that now owns and at all relevant times has owned 5,450 shares of CCPT III stock.

**B.**   **Defendants**

### 1.   **Nominal Defendant**

34.   Defendant **COLE CREDIT PROPERTY TRUST III, INC. ("CCPT III")** is a Maryland corporation with its principal place of business at 2325 East Camelback Road, Suite 1100, Phoenix, Arizona.  CCPT IIII is a non-publically traded REIT, which requires it to distribute at least 90% of its REIT taxable income to its shareholders annually.

35.   CCPT III is a REIT that specializes in "Necessity Retail" properties.  "Necessity Retail" properties include retail tenants who provide consumer staples and other necessities for American consumers on a day-to-day.  This includes pharmacies, home improvement stores, national superstores, restaurants and regional retailers, such as CVS and Nordstrom Rack.  CCPT III owns over 900 properties with combined retail space of over 39 million square feet, covering over 50 different industry segments.  CCPT III has a near 100% tenant occupancy rate.

36.   CCPT III was formed to acquire and operate a diverse portfolio of core commercial real estate investments consisting primarily of retail properties throughout the United States.  CCPT III's real property assets consist primarily of single-tenant properties and multitenant "power centers" anchored by large, creditworthy national or regional retailers.  CCPT III's retail properties are typically subject to long-term triple net or double net leases, which mean the tenant will be obligated to pay for most of the expenses of maintaining the property.  CCPT III's holds most properties for at least five years.

37.   CCPT III has no paid employees and is externally managed by CR III Advisors.  Two of CCPT III's directors, including the Chairman of the Board, are senior officers and/or directors of CR III Advisors.  Substantially all of CCPT III's business is conducted through Cole REIT III Operating Partnership ("CCPT III OP"), a Delaware limited partnership.  CCPT III is

**DERIVATIVE COMPLAINT**

the sole general partner of CCPT III OP.  CR III Advisors is the sole limited partner of CCPT III OP.  All of the Cole-related entities are intimately linked and share the same officers and directors.

38.     As of <u>September 30, 2012</u>, CCPT III had issued approximately 487.4 million shares of common stock through its initial offering at $10 per share (which closed on October 1, 2010), follow-on offer (which closed on April 27, 2012) and distribution reinvestment program (the "DRIP").  CCPT III common stock is not publicly traded and all of its shareholders own non-liquid securities.  In total, CCPT III has raised over $4.8 billion from investors, such as Plaintiff.  Those who invested CCPT III are injured and will continue to suffer injury if the internalization is allowed to go forward, and CCPT III's Board of Directors is allowed to continue to act in their own best interests to the detriment of CCPT III.

39.     CCPT III's Articles of Incorporation provide that CCPT III's common stock will not be listed on a national securities exchange and that CCPT III may seek to list its common stock for trading on a national securities exchange only if a majority of its independent directors believe listing would be in the best interest of its shareholders.  The Articles of Incorporation state that CCPT III will seek to list on a national stock exchange before October 1, 2020.  Prior to the announcement of the internalization, and as recently as <u>November 9, 2012</u>, CCPT III stated it was not intending to pursue a listing in the immediate future.  However, just four months later, CCPT III announced not only its intention to go public, but also its intention to bestow upon the Individual Defendants a massive financial payout from which no other shareholder would benefit.

## 2.     <u>Individual Defendants</u>

40.     Defendant **CHRISTOPHER H. COLE ("Chris Cole")** is the founder either directly or indirectly of each of the Cole entities described herein, including CCPT III.  He is the sole owner of Cole Holdings, which owns CR III Advisors, the entity that will be "acquired" by CCPT III in the multimillion dollar internalization acquisition, and therefore he will receive the lion's share of the benefits of that transaction.

41.     Defendant Chris Cole has served as the Chief Executive Officer, President and Chairman of the Board of CCPT III since CCPT III's formation in January 2008.  As sole

shareholder of Defendant Cole Holdings since its formation in August 2004, Defendant Chris Cole has served as its Chairman of the Board since October 2007, and previously served as its Chief Executive Officer from August 2004 until June 2011, as its President and Treasurer from August 2004 until April 2010, and as its Secretary from October 2007 to April 2010. He also has served as the Chief Executive Officer of CR III Advisors from its formation in January 2008 until June 2011, as its President from January 2008 until April 2010 and as its Treasurer from January 2008 until September 2008.

42. Defendant Chris Cole also has served as (a) Chief Executive Officer, President and Chairman of the Board of Cole Credit Property Trust I, Inc. since its formation in March 2004; (b) Chief Executive Officer of Cole REIT Advisors, LLC from its formation in April 2004 until June 2011, and as President from April 2004 until March 2007 and from October 2007 until April 2010; (c) Chief Executive Officer, President and Chairman of the Board of Cole Credit Property Trust, Inc. II since its formation in September 2004; (d) Chief Executive Officer of Cole REIT Advisors II, LLC from its formation in September 2004 until June 2011, and as President from September 2004 until March 2007 and from October 2007 until April 2010; (e) Chief Executive Officer, President and Chairman of the Board of Cole Credit Property Trust IV, Inc. since its formation in July 2010; and (f) Chief Executive Officer of Cole REIT Advisors IV, LLC ("CCPT IV Advisors") from its formation in July 2010 until June 2011.

43. Defendant Chris Cole controls all of the Cole-related entities, including the Cole-related entities that are the subject of this litigation. Defendant Chris Cole also controls CCPT III as its Chief Executive Officer, President and Chairman of the Board. Through his interlocking control of all of the Cole-related entities, Defendant Chris Cole has acted to benefit himself through these shell corporations, and the other Individual Defendants, to the detriment of CCPT III and its remaining shareholders of CCPT III, including Plaintiff.

44. Defendant **MARC T. NEMER ("Nemer")** has served as a director of CCPT III since May 2010. Defendant Nemer also has served as Chief Executive Officer of Defendant Cole Holdings since June 2011 and as its President since April 2010. Defendant Nemer has served as Chief Executive Officer of Defendant CR III Advisors since June 2011 and its President since April 2010. He previously served as CR III Advisors' Executive Vice President

and Managing Director of Capital Markets from September 2008 until April 2010, and as its Executive Vice President, Securities and Regulatory Affairs from its formation in January 2008 until September 2008.  Defendant Nemer has also served as President, Secretary and Treasurer of Cole Capital Corporation since January 2008, and a member of the boards of directors of numerous Cole-related entities, including Cole Credit Property Trust I, Inc., Cole Credit Property Trust IV, Inc. and Cole Income NAV Strategy.

45.     Defendant Nemer's financial interests are bound completely with Defendant Chris Cole.  Defendant Nemer has no ability to act in a manner independent of Defendant Chris Cole.  Defendant Nemer also would receive a substantial financial windfall from the internalization transaction as a principal of CR III Advisors.  Defendant Nemer is unable to make independent and appropriate decisions on behalf of CCPT III and in the best interests of CCPT III and its shareholders.

46.     Defendant **THOMAS A. ANDRUSKEVICH ("Andruskevich")** has served as a director of CCPT III since October 2008 and is a member of its Audit Committee. As a purported "independent director," Defendant Andruskevich was, pursuant to CCPT III's Articles, responsible for monitoring the performance and fees paid to CR III Advisors and with respect to the internalization, he was a member of the "special committee of independent directors" entrusted to evaluate the terms of the internalization to ensure that the deal was in the best interests of CCPT III and its shareholders.

47.     As one of the directors who approved the massive financial windfall that resulted from the internalization, Defendant Andruskevich cannot fairly evaluate his own misconduct. Defendant Andruskevich also is financially, professionally, and personally bound to Defendant Chris Cole.  Defendant Andruskevich is unable to make independent and appropriate decisions on behalf of CCPT III and in the best interests of CCPT III and its shareholders.

48.     Defendant **SCOTT SEALY, SR. ("Sealy")** has served as a director of CCPT III since October 2008. Mr. Sealy has also served as a member of the Board of Directors of Cole Credit Property Trust IV, Inc. since 2012.  As a purported "independent director," Mr. Sealy was, pursuant to CCPT III's Articles of Incorporation, responsible for monitoring the performance and fees paid to CR III Advisors and with respect to the internalization, he was a member of the

"special committee of independent directors" entrusted to evaluate the terms of the internalization to ensure that the deal was in the best interests of CCPT III and its shareholders.

49.     As one of the directors who approved the massive financial windfall that resulted from the internalization, Defendant Sealy cannot fairly evaluate his own misconduct.  Defendant Sealy also is financially, professionally, and personally bound to Defendant Chris Cole.  Defendant Sealy is unable to make independent and appropriate decisions on behalf of CCPT III and in the best interests of CCPT III and its shareholders.

50.     Defendant **LEONARD W. WOOD ("Wood")** has served as a director of CCPT III since October 2008.  As a purported "independent director," Mr. Wood was, pursuant to CCPT III's Articles, responsible for monitoring the performance and fees paid to CR III Advisors and with respect to the internalization, he was a member of the "special committee of independent directors" entrusted to evaluate the terms of the internalization to ensure that the deal was in the best interests of CCPT III and its shareholders.

51.     As one of the directors who approved the massive financial windfall that resulted from the internalization, Defendant Sealy cannot fairly evaluate his own misconduct.  Defendant Sealy also is financially, professionally, and personally bound to Defendant Chris Cole.  Defendant Sealy is unable to make independent and appropriate decisions on behalf of CCPT III and in the best interests of CCPT III and its shareholders.

52.     Defendants Chris Cole, Nemer, Andruskevich, Sealy and Wood are collectively referred to herein as the "Individual Defendants."

53.     Through the corporate and ownership structures of each of the defendant entities, and as principals of CCPT III, Cole Holdings and CR III Advisors, Defendants Chris Cole and Nemer are on both sides of the internalization transaction.

### 3.     Entity Defendants

54.     Defendant **COLE HOLDINGS CORPORATION ("Cole Holdings")**, an Arizona corporation, is a real estate investment management firm that shares its principal place of business with CCPT III at 2325 East Camelback Road, Suite 1100, Phoenix, Arizona.  Cole Holdings is wholly owned by Defendant Chris Cole who serves as Cole Holdings' Executive

Chairman of the Board.  Defendant Nemer is the President and Chief Executive Officer of Cole Holdings.

55.     Defendant **COLE REIT ADVISORS, LLC ("CR III Advisors")** is a Delaware limited liability company and shares its principal place of business with CCPT III and Cole Holdings at 2325 East Camelback Road, Suite 1100, Phoenix, Arizona.  Defendant Chris Cole was the Chief Executive Officer of CR III Advisors until 2011, at which time he was succeeded by Defendant Nemer.  CR III Advisors serves as the real estate advisor for CCPT III.  Pursuant to CCPT III's Articles of Incorporation and the Advisory Agreement between CCPT III and CR III Advisors, CR III Advisors served as an agent for CCPT III and at all relevant times has owed a fiduciary responsibility and duty to CCPT III and its shareholders.  CCPT III's Board of Directors has direct oversight responsibilities over CR III Advisors.

56.     Defendant **CREINVESTMENTS, LLC ("CREInvestments")** is a Maryland limited liability company and a direct, wholly owned subsidiary of CCPT III.  CCPT III formed CREInvestments for the sole purpose of facilitating the internalization.  Under the definitive merger agreement that was entered into between CCPT III, Cole Holdings and CR III Advisors, Cole Holdings would be merged into CREInvestments, which would then become a wholly-owned subsidiary of CCPT III.

57.     After the completion of the internalization, Cole Holdings and CR III Advisors will be absorbed into CREInvestments, which would become a wholly owned subsidiary of CCPT III.

### 4.     Aiding and Abetting/Conspiracy

58.     Defendants, and each of them, are sued as participants and as aiders and abettors, as herein alleged.  At all relevant times, each Defendant was and is the agent of each of the remaining Defendants, and in doing the acts alleged herein, was acting within the course and scope of such agency.  Each Defendant ratified and/or authorized the wrongful acts of each of the defendants.  There is a unity of interest and ownership between the Defendants listed above, such that the acts of the one are for the benefit and can be imputed as the acts of the other.

### 5.   **Unnamed Participants**

59.    Numerous individuals and entities participated actively during the course of and in furtherance of the scheme described herein. The individuals and entities acted in concert by joint ventures and by acting as agents for principals, in order to advance the objectives of the scheme to benefit Defendants and themselves to the detriment of CCPT III and its shareholders, including Plaintiff.

## V.

## STATEMENT OF FACTS

**A.    CCPT III's Relationship To Cole Holdings and the Advisor**

60.    From its inception, CCPT III has had no employees.  Cole Holdings, CRE III Advisors and the Cole Holdings Entities have conducted CCPT III's day-to-day operations (including investment analysis, acquisitions, financing, development, due diligence, asset management, property management and certain administrative services, such as financial, tax and regulatory compliance reporting), pursuant to an Advisory Agreement and the Property Management and Leasing Agreement. CCPT III has paid hundreds of millions of dollars in fees and expense reimbursements to Cole Holding Entities for these services.

61.    The prospectus for CCPT III states, in regards to CR III Advisors, "[t]here are substantial conflicts of interest between us and our advisor and its affiliates.  Key persons associated with our advisor perform similar duties for other Cole-sponsored programs that may use investment strategies similar to ours creating potential conflicts of interest when allocating investment opportunities.  In addition, our advisor and its affiliates have substantial discretion in managing our operations, and we pay them substantial fees."

62.    CCPT III has a fixed life and there is no efficient, liquid market in which its shareholders can sell their CCPT III common stock.  Pursuant to its Charter, if the Company's stock is not listed on a national securities exchange by October 1, 2020, the Company must either (i) seek stockholder approval of an extension or the elimination of this listing deadline; or (ii) seek stockholder approval to adopt a plan of liquidation.  The objective of this Charter provision is to ultimately provide CCPT III shareholders with liquidity and an exit strategy for their investments.

63.     Under the Advisory Agreement, CR III Advisors is required to evaluate and recommend an "appropriate exit strategy to [CCPT III's] board of directors." The Advisory Agreement provides that upon a Listing: the Advisory Agreement is to terminate, CRE III Advisors must proceed with the orderly transition of management to CCPT III, and CRE III Advisor will receive a Subordinated Listing Incentive Fee calculated as: "15.0% of the amount by which (i) the Market Value of the Company's outstanding Shares plus distributions paid by the Company prior to Listing, exceeds (ii) the sum of (A) 100% of Invested Capital and (B) the total Distributions required to be paid to the Stockholders in order to pay the Stockholders' 8.0% Return from inception through the date that Market Value is determined."

**B.      Internalization and Defendant Cole's Windfall**

64.     As alleged above, on March 6, 2013, CCPT III informed its shareholders that it had entered into a definitive merger agreement (the "Merger Agreement") with Cole Holdings and Merger Sub.

65.     The stated purpose of the Merger Agreement is to internalize the functions of CR III Advisors and the other Cole Holdings Entities, which are 100% owned by Cole Holdings and Defendant Cole, into CCPT III (i.e., the Internalization). Upon consummation of the Internalization, CCPT III purportedly will not need to contract with outside companies to perform its day-to-day operations.

66.     Upon completion of the Internalization, Cole Holdings, CR III Advisors, and the Cole Holdings Entities will become a wholly owned subsidiary of CCPT III, and CCPT III will change its name to Cole Real Estate Investments, Inc. and pursue a listing on the New York Stock Exchange ("NYSE").

67.     Defendant Cole would receive approximately $150 million worth of consideration from the Internalization, in addition to future contingent payments, if the transaction is consummated:

     a.   $20 million in cash;

     b.   10,711,225 shares of CCPT III common stock (valued at approximately $110 million, assuming $10 per share listing and trading price);

c.  2,142,245 shares of CCPT III common stock after a listing on the NYSE (valued at approximately $21 million, assuming $10 per share listing and trading price);

d.  Additional shares of CCPT III common stock potentially payable in 2017 as an "earn-out" contingent upon the acquired business' demonstrated financial success based on two criteria: (i) the acquired business generating EBITDA above a minimum threshold and (ii) CCPT III's stock performance relative to its peer group; and

e.  Additional shares of CCPT III common stock payable based on CCPT III's market value over the 30-day period beginning six months after CCPT III's listing, pursuant to the current Advisory Agreement. Cole Holdings agreed to a 25% reduction from the amount payable under the current advisory agreement, if any.

68.  In addition, Defendants Cole and Nemer have secured for themselves employment agreements with CCPT III providing for:

a.  annual base salaries of $750,000 and $625,000, respectively, "subject to increase (but not decrease);"

b.  annual incentive bonuses of 150% of annual base salary at target and 300% of annual base salary at maximum;

c.  starting in the 2015 fiscal year, an annual equity award grant to each;

d.  health, fringe, and other benefits for each;

e.  indemnification to the fullest extent applicable to directors and officers of the Company and coverage under a directors' and officers' liability insurance policy; and

f.  long-term incentive and retention awards in respect to CCPT III's shares, with an accounting expense value equal to $7.5 million for Defendant Cole and $6.0 million for Defendant Nemer.

69.  According to Cole Holdings, the Internalization is expected to close in the second quarter of 2013 upon the satisfaction of customary closing conditions and applicable regulatory approvals.

**DERIVATIVE COMPLAINT**                                                                 18

70.     The Merger Agreement was approved by the Director Defendants without any vote of the shareholders such that Plaintiff and CCPT's other non-affiliated shareholders are entirely reliant upon Defendants to effectuate the Internalization under terms most favorable to CCPT III.  Because Defendants sit on both sides of the transaction and the public stockholders in CCPT III have no voting authority, the Defendants have exploited and abused their position to put a deal in place that only benefits them.

71.     Shortly after CCPT III and Cole Holdings jointly issued a press release announcing the Merger Agreement, the media reported on this "sweetheart deal" for Defendants and the investor "criticism" of internalizations, like the one here, where Cole Holdings and CR III Advisors are getting "large upfront payments."

72.     As of the time of filing this Action, the Director Defendants had not yet closed on the Internalization transaction.

**C.     Cole's Exorbitant Consideration is Unwarranted**

73.      As alleged more specifically above, under the terms of the Merger Agreement, CCPT III will pay Defendant Cole, directly or through entities he controls, upfront and contingent consideration with a value of at least $150 million.  He and Defendant Nemer would also receive lucrative employment agreements.

74.     Defendants provide no financial data to support the tremendous upfront payment (plus the additional contingent payments) to be paid to Defendant Cole in the Internalization.

75.     Rather, Defendants withhold Cole Holdings' nonpublic financial statements (see, e.g., Merger Agreement at 14) and make conclusory statements in their press release announcing the Merger that the Internalization will be "immediately accretive to CCPT III's funds from operations" because CCPT III will have a "new income stream of fees earned by Cole Holdings from the management of other real estate vehicles, including Cole Credit Property Trust IV, Inc. ["CCPT IV"], Cole Corporate Income Trust, Inc. ["CCIT"] and Cole Real Estate Income Strategy (Daily NAV) ["Cole Income NAV Strategy"]."

76.     Neither the Merger Agreement or press release, nor Defendants' Power Point presentation (filed with the 3/6/2013 Form 8-K) discussing the Internalization, quantify Cole Holding's purported income stream or make representations as to the duration of the income

**DERIVATIVE COMPLAINT**                                                                                              19

stream of fees flowing from either CCPT IV, CCIT and Cole Income NAV Strategy or any other private programs or entities for whom Cole Holding's may provide advisory and management services.  Defendants have not provided any independent financial analysis supporting or justifying the cost to CCPT III of this self-dealing Internalization.

77.    What Defendants conceal and fail to disclose is that:  (i) Cole Holdings only derives a small percentage of its overall income from these entities; (ii) each of these entities is either in the formative stage with no basis from which to project recurring, payable fees to Cole Holdings or has waived fees to indicate that the advisory agreements have generated a loss for the company; and (iii) each of these entities owns relatively few properties.  Moreover, it is significant that each of these entities has a terminable contract that can either renew annually upon mutual consent, terminate by either party for any reason with 60 days written notice or immediately terminate upon the entity's listing.  Accordingly, there is no guarantee that Cole Holdings will earn an income stream from these entities this year or in any successive year.

78.    Defendants also misrepresent and withhold key information that would reveal that Cole Holding's projected income stream has dramatically dwindled as a result of the pending merger of affiliate Cole Credit Property Trust II, Inc. ("CCPT II") with self-advised Spirit Realty Capital.  In the past three years alone, CCPT II paid a total of $65.5 million in fees to Cole Holdings for management services on CCPT II's 752 properties, which have 21.2 million rentable square feet.

79.    Further, Defendants have misrepresented Cole Holding's management statistics to create the false impression that Cole Holding's income stream supports the egregious $150 million upfront payment.  For example, in the PowerPoint presentation titled "A Transformational Transaction: A High Attractive Real Estate Portfolio and A Leading Real Estate Investment Manager" that was provided to investors with the press release announcing the Internalization, states that Cole Holdings has under management 2,000 properties equating to 76 million rentable square feet.  However, when CCPT II's properties are backed out because of its pending merger with Spirit Realty Capital and CCPT III's properties are then backed out by virtue of the Internalization, it becomes painfully obvious that CCPT III represents the bulk of Cole Holdings' assets under management such that the Internalization is nothing more than a

farce under which CCPT III would pay an exorbitant price to buyout itself out of its terminable contracts with Cole Holdings that would terminate anyway upon CCPT III's anticipated listing on the NYSE.

80.     The PowerPoint Presentation also refers specifically to new fee income to CCPT III from CCPT IV, CCIT and Cole Real Estate Income Strategy.  CCPT IV has raised only $300 million of capital and owns 70 properties, CCIT has $261 million of capital and owns 19 properties, and Cole Real Estate Income Strategy has $24 million of capital and owns 12 properties.  Those realities contrast sharply with the purported "$12 billion of real estate" and 2,000 "high quality income producing properties" that CCPT III is purportedly getting in the Internalization.

81.     Importantly, the payments being made to Defendant Cole directly contradict and circumvent the intent and clear language of the Advisory Agreement.  Defendant Cole and CR III Advisors would get incentive, performance based compensation upon a Listing if CCPT III reached certain performance benchmarks measured by an independent measure.  Upon a Listing, for example, the Advisor would have been terminated and would have been entitled to a fee that was subordinated to a guaranteed minimum return to the shareholders.  In the Internalization as proposed, such listing fee has been characterized as "contingent" (meaning that the CR III Advisors might not even earn it), but provides for Defendant Cole to receive substantial consideration nonetheless.

82.     Finally, there is no demonstration that the Board and Advisor considered any other alternative for CCPT III and its shareholders to the self-dealing transaction such as a merger, asset sale to a third party, acquisition of all of CCPT III's outstanding shares by a third party, contracting with an independent third party advisor and/or a sale of substantially all of liquidation.

**D.     ARCP's Offers**

83.     On March 20, 2013, the ARCP Offer was publicly announced.  Specifically, ARCP offered to purchase CCPT III at a price of not less than $5.7 billion of equity value which equaled $9 billion when all debts were assumed.  This equaled $12.00 per share, representing a minimum 20% premium above the original offering price. The ARCP Offer stated that it

believed its proposal would provide a higher level of consideration delivered sooner and with greater certainty to CCPT III shareholders as compared to the internalization transaction currently contemplated.

84.     On March 27, 2013, ARCP publicly announced it had increased its offer to acquire CCPT III by **$700 million** – offering not less than $13.59 per share in stock, or $12.50 in cash which equates to a total acquisition value of more than $9.7 billion.  ARCP likewise revealed that it had privately reached out to Cole Holdings and its management numerous times without response.

85.     The March 20, 2013 ARCP Offer detailed the resulting benefits of its acquisition in comparison to the Internalization Transaction. ARCP's analysis is as follows:

**Our Proposal provides CCPT III stockholders immediate liquidity and greater certainty of value and successful execution.** Our Proposal provides immediate liquidity, certainty of value and stronger long-term growth potential for CCPT III stockholders. Additionally, we believe no regulatory approval is required, unlike the FINRA approval required in the Internalization Transaction.

**Our Proposal creates the largest, highest quality publicly traded REIT in the net lease sector.**

- Largest net lease REIT in sector by total capitalization and square footage;
- Diversified asset base including 1,706 properties with over 400 tenants;
- Diversified income stream with less than 33% of annualized gross rents from the ten largest tenants;
- Superior portfolio with best in class investment grade tenancy: 60% overall investment grade tenancy and 74% of top ten tenants;
- Longest weighted average lease duration in the net lease sector of 12.4 years; and
- Highly qualified management team with more than 51 years collective experience operating publicly traded REITs.

**Our Proposal results in an increase to pro forma 2013 and 2014 AFFO.** Our Proposal results in an increase to combined ARCP and CCPT III pro forma 2013 and 2014 AFFO,

resulting in part from a significant reduction in operating costs, namely elimination of CCPT III asset management fees and a pronounced reduction of G&A expenses.

**Our Proposal results in an increase in dividends per share.** CCPT III stockholders will enjoy an increase in the annualized CCPT III dividend per share of more than 9 cents, or approximately 15%, from 65 to 74 cents per share.

**Our Proposal is fully financed. Our Proposal is fully financed, eliminating execution risk and valuation ambiguity, while furnishing CCPT III stockholders immediate liquidity at closing.** We have received commitments to upsize our existing credit facility by $1.65 billion, with an accordion feature to further increase the facility to an aggregate of $2.5 billion.

**Our Proposal results in increased liquidity.** Our Proposal results in increased liquidity from index inclusions, including MSCI (RMZ), Russell 2000, S&P 400 and potentially S&P 500.

**Our Proposal includes an experienced management team.** Our Proposal includes an experienced management team that has been responsible for more than $9 billion of liquidity events in the past 15 months, and has experience in managing public companies with total enterprise value in excess of $20 billion.

**Our Proposal affords immediate access to the public capital markets.** ARCP benefits from a demonstrated access to the public capital markets, including ARCP's existing well-known seasoned issuer (WKSI) shelf registration.

**Our Proposal enhances the attributes of the combined companies, adheres to industry "best practices," and avoids combining unrelated businesses that could detract from stockholder value.** ARCP has a focused and proven business strategy that avoids the pitfalls in the Internalization Transaction, which includes the acquisition and operation of Cole Holding's non-real estate related business lines such as a broker-dealer.

86.     In addition, the ARCP Offer stated that it believed its Offer to be very compelling for CCPT III and its stockholders for the following reasons:

*Internalization Transaction Fails to Maximize Stockholder Value*
We believe that the Internalization Transaction raises significant conflict issues it only delivers certainty of value to Cole Holdings with no guarantee that CCPT III stockholders

will benefit in any way. This result is in clear contrast to market norms, including recent high-performing and market-supported comparables, such as the announced merger between Cole Credit Property Trust II, Inc. ("CCPT II") and Spirit Realty Capital, Inc. (NYSE: SFC), the successful merger of American Realty Capital Trust III, Inc. with ARCP, and American Realty Capital, Inc.'s merger with Realty Income Corp.

**Why aren't CCPT III stockholders being afforded the same benefits as the CCPT II stockholders?** Noted below are the significant shortcomings of the Internalization Transaction presently proposed. These same disadvantages have already been identified by CCPT III stockholders, independent broker dealers, due diligence officers and industry commentators. The disadvantages include:

**Unseasoned Management Team:** The CCPT III and Cole Holdings senior management teams have either no or very limited prior experience running a publicly listed company.

**Non-Qualifying REIT Income:** Based on the significant consideration being paid to Cole Holdings as a result of the Internalization Transaction, one could assume CCPT III will be a REIT with material non-qualifying income for REIT qualification test purposes.

**FINRA Approval Required:** There is no certainty that FINRA will approve CCPT III's acquisition of Cole Holding's broker dealer unit without restrictions or conditions that could adversely impact the transaction.

**Undue Complexity:** Complexities arising from the operation of non-real estate related businesses, including a registered broker dealer, could detract from the combined company's business strategy and its potential valuation.

**No Stockholder Vote:** There is no prior record of non-traded REITs merging with their affiliated advisors for a fee without a stockholder vote.

**Greater Potential for Poor Stock Price Performance:** There is a history of poor stock performance and below average total stockholder returns from non-listed REITs that have completed listings, resulting primarily from a lack of institutional sponsorship and buy-side support, imposed trading restrictions on common stock owned by legacy, non-traded stockholders and limited operating, portfolio and balance sheet transparency and sell-side research coverage.

**Multiple Unaddressed Risks:** CCPT III has failed adequately to address, explain and quantify the risks of achieving a listing, including:

- Market risk - the risk that changes in the macro-economic or global geo-political climate could result in market dislocations, potentially delaying (possibly indefinitely) the planned stock market listing of CCPT III or potentially reducing the listing price of shares of CCPT III common stock;

- Trading / liquidity risk - CCPT III has failed to affirm that shares of CCPT III common stock will be listed and fully tradable without restriction at the time of listing; if CCPT III were to impose restrictions on trading, these restrictions would impair the liquidity for CCPT III stockholders; and

- Lack of market support - prior successful listing transactions have included a market support mechanism, typically in the form of an issuer self-tender offer, that provides trading liquidity and reduces trading volatility in the days following a listing. CCPT III has not provided CCPT III stockholders assurance that any such market support will be provided or, if market support is provided, at what

price level such support might be offered, and whether the dollar value of such support will be sufficient given the size of CCPT III's equity capitalization.

## E.    CCPT III's Board of Directors Ignore All Criticisms and Other Offers

87.    In a March 21, 2013 press release, the CCPT III Board of Directors reaffirmed its commitment to go forward with the internalization plan that benefits only the Individual Defendants and announced their rejection of the initial ARCP Offer, less than 48 hours after the offer was made.  No explanation is given by the CCPT III Board of Directors about why the internalization is in the best interests of the shareholders or is necessary for CCPT III to become a publically traded company.  The quick announcement by the CCPT III Board of Directors that it would push forward with the internalization, while simultaneously rejecting the initial ARCP Offer demonstrates that the CCPT III Board of Directors is not disinterested.  Instead, the CCPT III Board of Directors is insisting on going forward with an internalization plan, without due diligence or analysis, which benefits the Individual Defendants to the exclusion of all other CCPT III shareholders.

88.    On March 25, 2013, CCPT III released a presentation to investors with a purported justification for the internalization of Cole Holdings and CR III Advisors.  The presentation, however, fails to disclose the fact that virtually all of Cole Holdings and CR III Advisors' revenues and profits come from Cole-related entities, principally CCPT III itself.  As such, this purported justification constitutes a misrepresentation and concealment of material facts as to the shareholders of CCPT III.  Furthermore, the presentation also misrepresents the value of the initial ARCP offer.  This presentation was created by CCPT III itself under the direction of the Individual Defendants, not an independent third party.  Although the presentation was attached to a press release, CCPT III's Board of Directors is not putting the internalization and the ARCP Offer to a vote of its shareholders.  If CCPT III's Board of Directors was truly convinced that the internalization plan, despite being rife with conflicts of interest and self-dealing was in the best interests of the company, it should put the internalization plan to a vote of the shareholders, minus the interest shareholders, such as the individual Defendants.  Similarly, if the CCPT III Board of Directors is convinced that the ARCP Offer is inferior to

**DERIVATIVE COMPLAINT**

internalization, that should also be brought to a vote by all of the shareholders, without any of the interested shareholders, such as the Individual Defendants, being allowed to vote.

## VI.

## RESPONSIBILITIES OF OFFICERS AND DIRECTORS

89.     Corporate directors owe fiduciary duties to the companies they serve, which include a duty of loyalty and a duty of care.  The fundamental principle of the corporate law governing CCPT III is that that the business and affairs of CCPT III are managed by and under the direction of CCPT III's Board of Directors.  In exercising its powers, corporate directors are charged with an unyielding fiduciary duty to protect the interests of the corporation and to act in the best interests of the shareholders.  The CCPT III Board of Directors, all of whom are named defendants in this action, owed CCPT III the highest fiduciary duties and were obligated to protect and defend the interests of CCPT III.

90.     The corporate directors of CCPT III owe the company a duty of care and a duty of loyalty.  The duty of care includes a duty by each director of CCPT III to inform himself, prior to making a business decision, of all material information available to the director relating to that business decision and to consider all alternatives.  The more significant the decision, the greater is the requirement to probe and consider alternatives.  In this case, the decisions whether to proceed with the internalization and how to respond to the ARCP bid are indisputably the most fundamental and important decisions to be made on behalf of CCPT III and its shareholders. Both the duty of care and the duty of loyalty warranted careful and cautious deliberation of these matters, after substantial analysis and due diligence to determine that both decisions were in the best interests of the shareholders of CCPT III.  The CCPT III Board of Directors was obligated to review the decision to internalize, the internalization value and the value of the acquisition offer before making its final decision.  The CCPT III Board of Directors was obligated to conduct that review in a thorough manner and not rush to the decision that would benefit them to the exclusion of all other CCPT III shareholders.

91.     Nevertheless, in violation of both the duty of care and the duty of loyalty that the CCPT III Board of Directors owed to their shareholders, and with no true consideration of the best interests of CCPT III or its shareholders, Defendants authorized CCPT III  simply to hand over tens of millions of dollars of assets to its own officers and directors in a transaction that was not arms-length and riddled with conflicts of interest.  In addition, in less than 48 hours, the CCPT III Board of Directors, without any due diligence rejected outright a $5.74 billion acquisition offer from ARCP that would have allowed its shareholders to obtain an immediate and substantial profit on their investments.

92.     As fiduciaries of CCPT III and its shareholders, the members of CCPT III's Board of Directors had a duty to personally assure themselves that CCPT III was not wasting hundreds of millions of dollars in a self-serving transaction.  Their duty was to personally assure themselves that the ARCP offer was not in the best interests of CCPT III shareholders.  CCPT IIII's Board of Directors failed in that duty.  Defendants instead chose their own self-interest over the best interests of CCPT III,

93.     Corporate directors also owe a duty of loyalty to the corporation that they serve. That duty of loyalty is a broad and all-encompassing duty that imposes on corporate directors a special obligation to hold the interests of the corporation above their own interests, and to act exclusively in the best interests of the corporation and its shareholders.  The duty of loyalty embodies both an affirmative duty to protect the interests of the corporation and an obligation to refrain from conduct that would injure the corporation and its shareholders in any way.  The Individual Defendants in this case failed in this regard.  The decision to go forward with the internalization at all costs and to outright reject the ARCP acquisition offer was one based entirely on the self-interest of the Individual Defendants to the detriment of the company and its shareholders.

94.     In this case, CCPT III's Board of Directors put their own interests ahead of that of the company.  Defendants Chris Cole and Nemer, as principals of CCPT III, CR III Advisors, and Cole Holdings, violated the duties of loyalty owed to CCPT III to act in the best interests of CCPT III by engineering a transaction by which they could garner tens of millions of dollars in

corporate funds or assets.  Defendant Chris Cole further breached such duties by supporting the internalization that would result in a massive personal windfall to himself and in opposing the ARCP acquisition bid.   He opposed the ARCP acquisition bid because it would have prevented him from obtaining the substantial benefits that would result from the internalization.

95.    Defendants Andruskevich, Sealy and Wood also violated their duties of loyalty to CCPT III by voting for and approving the internalization and rejecting the ARCP acquisition bid without conducting any due diligence or analysis.  As such, the Individual Defendants violated their duty of loyalty to CCPT III.

96.    The Individual Defendants supported and ultimately voted to approve the internalization without conducting any due diligence of the providence of such an action, or the valuation made on the acquisition offer.  The Individual Defendants also voted to reject the ARCP acquisition bid in less than 48 hours without conducting any due diligence or engaging in negotiations or discussions with ARCP.  In committing these acts and failing to fulfill their responsibilities as officers and directors of CCPT III, they breached their fiduciary duties to the company.

97.    As a direct and proximate result of the Individual Defendants' actions, CCPT III has expended, and will continue to expend, significant sums of money.  Such expenditures include, but are not limited to:

> (a)    costs incurred from going forward and overpaying for the internalization of Cole Holdings and CR III Advisors;
>
> (b)    costs incurred from extravagant employment agreements that CCPT III is granting to the principals of Cole Holdings and CR III Advisors, the same individuals who are key policy-makers for CCPT III;
>
> (c)    costs incurred from rejecting the ARCP acquisition bids which would have provided immediate profit and liquidity to the shareholders of CCPT III;
>
> (d)    costs incurred from civil investigations and litigation against CCPT III and its officers and directors;

(e)  significant reputational harm to CCPT III and the credibility of Defendant Chris Cole and all of the Cole-related entities;

(f)  costs incurred from lost customers and business opportunities;

(g)  costs incurred from compensation paid to the defendants who have breached their duties to CCPT III.

## VII.

## DEMAND ALLEGATIONS

98.   Plaintiff brings this action derivatively in the right of and for the benefit of CCPT III to redress injuries suffered and to be suffered by CCPT III as a result of the Defendants' breaches of fiduciary duty, abuse of control, and gross mismanagement.  Plaintiff and her counsel will adequately and fairly represent the interests of CCPT III in enforcing and prosecuting its rights.  Plaintiff incorporates by reference into this section all of the foregoing factual allegations, which demonstrate that demand on the Board of Directors is futile.

99.   Plaintiff has not made any demand on CCPT III's Board of Directors to investigate and prosecute the malfeasance alleged herein.  As alleged more specifically below, such a demand is excused in this case because: (i) making a demand would be a futile and useless act as the majority of CCPT III's directors are not able to conduct an independent and objective investigation of the alleged wrongdoing; and (ii) the wrongful conduct of defendants is not subject to protection under the business judgment rule.  Under such circumstances, the demand requirement is excused since making such a demand on the Board of Directors would be futile.

100.   Based upon the Defendants' acts and omissions in direct violation of their fiduciary duties of care, good faith, honesty and loyalty, a pre-suit demand on the CCPT III Board to bring the claims asserted in this action is excused as a futile and useless act.  CCPT III's Board of Directors personally profited from the wrongdoing alleged in this Complaint.  In fact, it was the CCPT III Board of Directors who had the largest financial incentive for engaging in the misconduct alleged in this complaint, misconduct that resulted in hundreds of millions of dollars in profits for the Individual Defendants.  It was the CCPT III Board of Directors that made the

**DERIVATIVE COMPLAINT**

ultimate decision to go forward with the internalization of Cole Holdings and CR III Advisors, solely to allow the Individual Defendants to profit. It was the CCPT III Board of Directors who has repeatedly rejected the ARCP acquisition bids including a rejection of a $9 billion offer in less than 48 hours in order to protect the massive profits resulting from the CCPT III internalization.

101. The fact that the CCPT III outright rejected the ARCP $9 billion acquisition bid and appears to have rejected a $9.7 billion bona fide offer from a disinterested outside party, without any due diligence, analysis or negotiation demonstrates conclusively that demand is futile in this case. As fiduciaries of CCPT III, the Individual Defendants each had a duty to analyze that acquisition bid, conduct a thorough due diligence analysis and then reach an independent decision on the merits of the acquisition offer. Each of the Individual Defendants was required to do this, with the best interests of the CCPT III shareholders in mind. Instead, the CCPT III completely ignored the initial overture for a potential acquisition of CCPT III by ARCP, and then rejected the second public acquisition offer in under 48 hours, and has now rejected a third which increased the target price by $700 million. Since it is evident that the CCPT III Board of Directors is hell-bent on finalizing the wrongful internalization, at all costs, demand on the CCPT III Board of Directors is futile. All of the Individual Defendants had a financial incentive to push forward with the internalization of Defendants Cole Holdings and CR III Advisors and to outright reject the ARCP acquisition. Both these decisions preserved the hundreds of millions of dollars that would accrue to the benefit of the Individual Defendants by allowing the internalization plan to go forward. The Individual Defendants also received extravagant and uncalled for compensation packages as part of the internalization in order to become purported "employees" of CCPT III, providing the exact same services after the internalization as they would prior to the internalization.

102. The Individual Defendants personally voted for and supported the decisions to go forward with the internalization and to reject the ARCP acquisition bid. As such, the Individual Defendants are in no position to evaluate the fairness and propriety of their own actions. The

Individual Defendants lack the objectivity to investigate and prosecute claims against themselves for their clear violation of their duties of care and loyalty owed to CCPT III and its shareholders.

103.    The Individual Defendants' decision to go forward with the internalization of Cole Holdings and CR III Advisors, is not protected by the business judgment rule.  The Individual Defendants voted for an internalization profit that would provide zero benefit to the shareholders of CCPT III while rewarding the Individual Defendants with hundreds of millions of dollars.  No analysis was done to determine whether the internalization was in the best interests of CCPT III and what the fair value of such an internalization should have been, assuming that an internalization was warranted.  The Board of Directors of CCPT III had an independent duty to consider all reasonably available information before making any business decision.  Demand is futile since it is evident that the Individual Defendants have personally engaged in misconduct that is not protected by the business judgment rule.

104.    The Individual Defendants' decisions to reject the ARCP acquisition bids are also not protected by the business judgment rule.  The Board of Directors of CCPT III owed a duty of care and of loyalty to the company its shareholders.  This would have warranted a thorough due diligence review of the acquisition bid and, at minimum, negotiations with ARCP.  The Board of Directors of CCPT III, instead voted to outright reject the ARCP acquisition $ 9 billion bid, without negotiation in less than 48 hours and has ignored a $9.7 billion bid.  The Individual Defendants are not protected by the business judgment rule because they did not exercise any business judgment.  Instead, the Individual Defendants made a decision, without conducting any due diligence, for the sole purpose of profiting the massive profits that would result from the internalization of Cole Holdings and CR III Advisors.

105.    The acts complained of constitute violations of the fiduciary duties owed by CCPT III's officers and directors and are incapable of ratification.

106.    The CCPT III Board of Directors cannot be relied upon to reach a truly independent decision whether to commence the demanded action against themselves and the officers responsible for the misconduct alleged in this derivative complaint because, among other things, the Board is currently dominated by the Individual Defendants, who were personally and

directly involved in the acts of mismanagement, abuse of control and waste alleged and who each approved the actions complained of, and to whose directives and views the Board has consistently acceded and will continue to accede.  None of them are in a position to fairly evaluate their own misconduct in this case.

107.    This domination of CCPT III's Board of Director prevents it from validly exercising its business judgment in a fair and neutral manner, and renders it incapable of reaching an independent decision whether to accept any demand by plaintiff to address the wrongs detailed herein, as exemplified by their inaction in the years since the original suit was filed.

108.    A majority of the directors received personal and financial benefits while they caused or permitted CCPT III to engage in the extensive misconduct detailed in this derivative complaint.

## VIII.
## CAUSES OF ACTION
## FIRST CLAIM FOR RELIEF
## BREACH OF FIDUCIARY DUTY
## AGAINST THE INDIVIDUAL DEFENDANTS AND
## AGAINST CR III ADVISORS AND COLE HOLDINGS

109.    Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

110.    Each of the Defendants sued under this cause of action owed fiduciary duties to CCPT III, either as a matter of corporate law in regards to the Individual Defendants or as a matter of contract and agency law in regards to the CR III Advisors and Cole Holdings.  Pursuant to the Articles of Incorporation of CCPT III, the Individual Defendants specifically " have a fiduciary duty to the shareholders of [CCPT III], including a specific fiduciary duty to supervise the relationship of [CCPT III] with [CR III Advisors]."  The Articles of Incorporation also state that CR III Advisors, which is owned and controlled by Cole Holdings, "has a fiduciary responsibility to [CCPT III] and to the Shareholders."

111.    Defendants specifically owed and owe CCPT III the highest obligation of good faith and loyalty in the administration of the affairs of CCPT III, including the due diligence done in regards to any acquisitions made by CCPT III and considering any potential acquisition offers from outside parties.  As directors and officers of CCPT III, the Defendants were and are required to use their abilities to control and manage CCPT III in a fair, just and equitable manner in order to ensure that the Company complied with applicable laws and contractual obligations, to refrain from abusing their positions of control, and not to favor their own interests at the expense of CCPT III and its shareholders.  Defendants violated their fiduciary duties to CCPT III, including without limitation their duties of care, good faith, honesty and loyalty.

112.    By their acts and omissions alleged herein, Defendants, and each of them, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of CCPT III in a manner consistent with the best interest of the shareholders of CCPT III.

113.    Each of the Defendants violated his or its duty of care by voting to approve the acquisition of CR III Advisors without conducting any due diligence and making that decision based on the self-interest of the Individual Defendants and not the interests of the shareholders of CCPT III.  Defendants violated their fiduciary duties by approving the internalization of Cole Holdings and CR III Advisors without any consideration of whether such conduct was appropriate, and if so, what the appropriate valuation should be for the internalization.  Instead, the Defendants acted instead to protect their own pecuniary interests in disregard of the shareholders of CCPT III.

114.    Each of the Defendants violated his or its duty of care by failing to analyze and evaluate any strategic alternatives to the internalization of CR III Advisors, including whether or not the internalization should have occurred at all.  The internalization of CR III Advisors was not necessary for CCPT III go public.  Instead, the internalization was a mechanism for the principals of CCPT III, the Individual Defendants in this action, to reap massive financial rewards, both upfront and after any proposed public listing of CCPT III.  Internalization was a mechanism by which Defendants would profit themselves at the expense of CCPT III and its shareholders.

115.     Each of the Defendants breached his or its fiduciary duties by failing to implement appropriate measures to ensure that CCPT III's relationship with CR III Advisors did not become a vehicle for wrongful self-dealing.  Each of the Defendants knew of the inherent conflicts of interest in the structure of the relationship between CCPT III and CR III Advisors but ignored them for the benefit of the Defendants.

116.     Each of the Defendants breached his or its fiduciary duties by rejecting the ARCP $ 9 billion acquisition offer in one day without conducting any due diligence of the offer and ignoring an additional $9.7 billion offer.  The ARCP bids would result in immediate CCPT III and shareholder profit and liquidity.  These bids would also mean that the Defendants would not reap the financial benefits of the internalization.  Each of the Defendants violated his or its fiduciary duties by going forward with the internalization and rejection of the ARCP offers.

117.     The wrongful conduct particularized herein was not due to an honest error in judgment, but rather to the Individual Defendants' gross mismanagement, bad faith and/or reckless disregard of the rights and interests of CCPT III, and it shareholders.  CCPT III's Board of Directors made the decisions subject to this action for their own pecuniary gain.

118.     As a result of the foregoing, the Defendants have participated in harming CCPT III and have breached fiduciary duties owed to CCPT III.  The Defendants knowingly aided, encouraged, cooperated and/or participated in, and substantially assisted the other Defendants in the breaches of their fiduciary duties.

119.     As a result of the Defendants' wrongful conduct, CCPT III has suffered and continues to suffer economic losses and non-economic losses, all in an amount to be determined according to proof at the time of trial.  As a direct and proximate result of defendants' foregoing breaches of fiduciary duties, CCPT III has suffered or will suffer hundreds of millions of dollars in damages, including, but not limited to the, internalization fee paid to the Individual Defendants and the amount lost due to CCPT III's outright rejection of the ARCP acquisition without conducting any due diligence.

**DERIVATIVE COMPLAINT**                                                                 34

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SECOND CLAIM FOR RELIEF

## ABUSE OF CONTROL

## AGAINST THE INDIVIDUAL DEFENDANTS

120.    Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

121.    By virtue of their positions and financial holdings in CCPT III, the Individual Defendants exercised control over CCPT III and its operations, and owed duties as controlling persons to CCPT III not to use their positions of control within the Company for their own personal interests and contrary to the interest of CCPT III.

122.    The Individual Defendants' conduct amounts to an abuse of their control of CCPT III, in violation of their obligations to CCPT III.  The Individual Defendants knowingly aided, encouraged, cooperated and/or participated in, and substantially assisted the other Defendants in their abuse of control.  The Individual Defendants put their own pecuniary interests ahead of that of the corporation.  The Individual Defendants abused their control of CCPT III by putting their own self-interest ahead of the best interests of the company.

123.    As a result of the Individual Defendants' abuse of control, CCPT III has sustained and will continue to sustain damages and injuries for which it has no adequate remedy at law, including but not limited to the damages resulting from the decision by the CCPT III Board of Directors to go forward with the internalization, and to reject the ARCP acquisition bid without due diligence or discussion.  Both of these acts occurred without the input of the shareholders of CCPT III and it is likely that the CCPT III Board of Directors will continue to act unilaterally and not in the best interests of the company if they are allowed to continue to abuse their control of the company.

124.    The acts of the Individual Defendants named herein, and each of them, were done maliciously, oppressively, and with intent to defraud, and Plaintiff on behalf of CCPT III is entitled to punitive and exemplary damages in an amount to be shown according to proof at the time of trial.

### THIRD CLAIM FOR RELIEF

### CORPORATE WASTE

### AGAINST THE INDIVIDUAL DEFENDANTS

125.    Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

126.    As alleged in detail herein, the Individual Defendants had a fiduciary duty to exercise good faith and diligence in the administration of the affairs of CCPT III and in the use and preservation of its property and assets, and the highest obligation of fair dealing.

127.    The Individual Defendants wasted CCPT III's corporate assets by failing to conduct proper due diligence related both to the internalization of Cole Holdings and CR III Advisors and to the rejection of the ARCP acquisition bids.  In both decisions, the Individual Defendants decided to waste corporate resources by putting money into the pockets of the Individual Defendants to the detriment of CCPT III's shareholders.

128.    The Individual Defendants also wasted corporate assets by paying improper compensation and bonuses to certain of CCPT III's directors and executive officers that breached their fiduciary duty.  The fact that these compensation packages were paid and the size of these compensation packages constitute gross waste of corporate assets.

129.    As a result of the Individual Defendants' wrongful conduct, CCPT III has suffered and continues to suffer economic and non-economic losses, all in an amount to be determined according to proof at trial.

### FOURTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT

### AGAINST THE INDIVIDUAL DEFENDANTS

130.    Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

131.    The Individual Defendants derived compensation, fees and other benefits from CCPT III and were otherwise unjustly enriched for their management of CCPT III during the time in which the wrongful practices occurred, to the detriment of CCPT III.  Defendants profited by engaging in the wrongful conduct set forth above.  Most prominently, the Individual

Defendants are scheduled to make tens of millions of dollars in unjust profits from the internalization.  These profits will accrue to the Individual Defendants and to the exclusion of all other shareholders of CCPT III.  These benefits should not be held or retained by the Individual Defendants and should be disgorged back to the company.

132.   Individual Defendants' enrichment is directly and causally related to the detriment of CCPT III.

133.   These benefits were accepted by Individual Defendants under such circumstances that it would be inequitable for them to be retained without payment.  The Individual Defendants, in fact, voted and approved an internalization plan that serves no other purpose than to pay out a massive windfall to the Individual Defendants.  The Individual Defendants then rejected an acquisition bid for CCPT III because it would have affected their ability to reap the profits of the internalization.

134.   As alleged above, CCPT III Individual Defendants breached their fiduciary duties and/or abused their positions of control to CCPT III and therefore Defendants are not justified in retaining the benefits conferred upon them.

135.   The acts of the Individual Defendants named herein, and each of them, were done maliciously, oppressively, and with intent to defraud, and Plaintiff on behalf of CCPT III is entitled to punitive and exemplary damages in an amount to be shown according to proof at the time of trial.

## FIFTH CLAIM FOR RELIEF

## AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY

## AGAINST COLE HOLDINGS AND CREINVESTMENTS, LLC

136.   Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

137.   Defendants Cole Holdings and CREInvestments aided and abetted the Individual Defendants' breaches of fiduciary duty by their active participation, aid, encouragement, and/or ratification of the breach, for their own benefits.

138.   Defendant Cole Holdings is the parent corporation of CR III Advisors, which owed a fiduciary duty to CCPT III, both pursuant to CCPT III's Articles of Incorporation and the

Advisory Agreement between CR III Advisors and CCPT IIII. Defendant Cole Holdings knew of that fiduciary relationship. Defendant Cole Holdings is also wholly owned by Defendant Chris Cole and Defendant Nemer serves as the President of Cole Holdings. Both individuals are directors of CCPT III. As such, Defendant Cole Holdings was well aware of the breach of fiduciary duties being undertaken by CCPT III's Board of Directors, since the individuals engaged in that misconduct were also the top two senior individuals at Defendant Cole Holdings. The breach of fiduciary duties ended up being a windfall for Defendant Cole Holdings, which received substantial economic benefits from being "acquired" by CCPT III.

139.    Defendant Cole Holdings substantially assisted the breach of fiduciary duties of the Individual Defendants by allowing itself to serve as the corporate mechanism by which the Individual Defendants have positioned themselves to divert tens of millions of dollars away from CCPT III and into their own pockets. In doing so, Defendant Cole Holdings provided substantial aid, encouragement and support to the breach of fiduciary duties by the Individual Defendants.

140.    Defendant CRE Investments also was fully aware of the breach of fiduciary duties being undertaken by the Individual Defendants. CREInvestments was, in fact, created to be the instrument of this malfeasance since it would purportedly absorb Defendant Cole Holdings and CR III Advisors (with substantial profit to the Individual Defendants) and then become a wholly-owned subsidiary of CCPT III. As such, Defendant CREInvestments not only provided substantial aid, encouragement and support to the Individual Defendants, but did so knowingly and intentionally.

141.    The conduct of Defendants Cole Holdings and CREInvestments was a substantial cause of the harm alleged herein. If Cole Holdings and CREInvestments had not provided their approval and support of the internalization plan, or if they had prevented the Individual Defendants from breaching their fiduciary duties to CCPT III, CCPT III and its shareholders would not have suffered the serious injuries caused by CCPT III's misguided internalization of CR III Advisors and the rejection of the ARCP acquisition bids.

142.    As a result of this wrongful conduct, CCPT III has suffered and continues to suffer economic and non-economic losses, all in an amount to be determined according to proof at trial.

143.    The acts of Defendants Cole Holdings and CREInvestments, and each of them, were done maliciously, oppressively, and with intent to defraud, and Plaintiff on behalf of CCPT III is entitled to punitive and exemplary damages in an amount to be shown according to proof at the time of trial.

**SIXTH CLAIM FOR RELIEF**

**BREACH OF CONTRACT/IMPLIED COVENANT OF**

**GOOD FAITH AND FAIR DEALING**

**AGAINST CR III ADVISORS**

144.    Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

145.    CR III Advisors entered into a contract with CCPT III in which it agreed to provide real estate advisory services to CCPT III.  As part of that agreement, CR III Advisors obligated itself to properly and appropriately perform those real estate advisory services in a manner consistent with industry standards.  Most importantly, pursuant to the Advisory Agreement between CR III Advisors and CCPT III, CR III Advisors acted as an agent for CCPT III and therefore owed CCPT III a fiduciary duty to act in the best interests of CCPT III and its shareholders at all times.

146.    CCPT III and Plaintiff has done all, or substantially all of the significant things that the contract required it to do, or it was excused from having to do those things.

147.    All conditions required for CR III Advisors to perform its obligations under the contracts with CCPT III had occurred.

148.    CR III Advisors breached the contract, as well as the implied covenants of good faith and fair dealing that is implied into every contract under Arizona law, by violating the fiduciary duties that it was contractually obligated to provide to CCPT III.  CR III Advisors breached the contract by aiding, encouraging, supporting and participating in the plan to internalize Cole Holdings and CR III Advisors in a manner that harmed CCPT III, while benefiting CR III Advisors and its principals, including the Individual Defendants.

149.    As a direct result of the improper breach of contract, CCPT III, Plaintiff and other CCPT III shareholders have been injured.

## SEVENTH CLAIM FOR RELIEF

### DECLARATORY RELIEF

150.  Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

151.  This Court has the authority to grant declaratory relief in this action pursuant to 28 U.S.C. § 2201(a) and to grant such further relief as may be necessary and proper pursuant to 28 U.S.C. § 2202.

152.  Defendants have violated their fiduciary duties by approving the internalization of Cole Holdings and CR III Advisors.  This decision was made by directors who are not disinterested.  The decision is harmful and injurious to the shareholders of CCPT III and was made with the sole intent of benefitting the Individual Defendants, to the detriment of all of the other shareholders of CCPT III.  Furthermore, this action has put the interests of Nominal Defendant CCPT III against the interests of the other Defendants, in that the other Defendants are seeking to waste and divert the assets of CCPT III for their own benefit.

153.  Under the circumstances, an actual controversy has arisen and now exists between Plaintiff and the Nominal Defendant on the one hand, and the Defendants, and each of them, on the other, as to which Plaintiff, derivatively on behalf of CCPT III, requires a declaration of rights, relaying to the legal rights and duties of Plaintiff, the Nominal Defendants and the Defendants and each of them, relating to the internalization of Cole Holdings and CR III Advisors and the outright rejection of the ARCP acquisition bids.

154.  A declaratory judgment is necessary in that Plaintiff, derivatively on behalf of CCPT III, seeks a judicial declaration that:

      (a)    None of the Individual Defendants are independent directors in regards to the internalization transaction and none of them had the authority to act on behalf of CCPT III in approving the internalization of Cole Holdings and CR III Advisors;

      (b)    Since the Individual Defendants are not disinterested directors, they lacked the authority to act on behalf of CCPT III in approving the internalization

of Cole Holdings and CR III Advisors, rendering their decision on this issue null and void.

(b)    That the Defendants in this case had a legal obligation to consult with or put to a shareholder vote of only disinterested shareholders the internalization of Cole Holdings and CR III Advisors;

(c)    That the Defendants in this case had a legal obligation to consult with or put to a shareholder vote of only disinteresting shareholders the decision whether or not to accept, decline or further negotiate the $5.4 billion acquisition offer from ARCP.

## PRAYER FOR RELIEF

Plaintiff, derivatively on behalf of CCPT III, prays for judgment as follows:

1.     Awarding damages against all Defendants, jointly and severally, in an amount to be proven at trial;

2.     Awarding a preliminary and/or permanent injunction precluding CCPT III and its Board of Directors from finalizing the internalization of Cole Holdings and CR III Advisors on the present terms.

3.     Awarding any additional appropriate equitable relief, including any injunctive or declaratory relief necessary to change and/or reform CCPT III's corporate governance, policies and culture.  This includes but not limited to requiring CCPT III and its Board of Directors to have an independent third party conduct an appropriate analysis and due diligence of all acquisition offers, including the acquisition bid from ARCP.

4.     Awarding restitution, disgorgement of all illicit proceeds generated as a result of the wrongful conduct alleged herein, and punitive damages;

5.     Awarding pre-judgment interest, as well as reasonable attorneys' fees and other costs;

6.     Awarding such other relief as this Court may deem just and proper.

Dated: March 27, 2013           **HARALSON, MILLER, PITT, FELDMAN & McANALLY, P.L.C.**

/s/ *Gerald Maltz*
GERALD MALTZ

**COTCHETT, PITRE & McCARTHY, LLP**
NIALL P. McCARTHY
ANNE MARIE MURPHY
ARON K. LIANG
MATTHEW K. EDLING

**LAW OFFICES OF GEORGE B. DONALDSON**
GEORGE B. DONALDSON

*Attorneys for Plaintiff Jill B. Carter, individually and on behalf of Jill B. Carter IRA*

**DERIVATIVE COMPLAINT**                                                                     42

1

## <u>JURY TRIAL DEMAND</u>

2    Plaintiff hereby demands a trial by jury of all issues which are subject to adjudication by

3   a trier of fact.

4

Dated: March 27, 2013            **HARALSON, MILLER, PITT, FELDMAN &**

5                                **McANALLY, P.L.C.**

6                                /s/ *Gerald Maltz*

7                                GERALD MALTZ

8                                **COTCHETT, PITRE & McCARTHY, LLP**

9                                NIALL P. McCARTHY

                                 ANNE MARIE MURPHY

10                               ARON K. LIANG

11                               MATTHEW K. EDLING

12                               **LAW OFFICES OF GEORGE B.**

                                 **DONALDSON**

13                               GEORGE B. DONALDSON

14                               *Attorneys for Plaintiff Jill B. Carter, individually*

                                 *and on behalf of Jill B. Carter IRA*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **VERIFICATION**

2       I, JILL B. CARTER, declare:

3       I am the plaintiff in this action.  I, through my IRA, am also a shareholder of Cole

4  Credit Property Trust III, Inc. and have been during the relevant time period.  I certify

5  under penalty of perjury that I have read and reviewed the Shareholder Derivative

6  Complaint filed in this action and authorized its filing.  Based on my and my counsel's

7  investigation, the contents of the Complaint are true to best of my knowledge, information

8  and belief.

9       Date:  March 26 , 2013

10                                                    JILL B. CARTER

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Verification To The Shareholders' Derivative Complaint**